Judge Collet
delivered the opinion of the court:
When the first deed was made, it was not known where the mills would be erected; when the last deed was executed this was ascertained. By it an acre of land, described by motes and bounds, including the mills and yards and privileges conveyed by the first, was conveyed to Clark, his heirs and assigns, to be occupied by them “so long” as they kept a sáw-mill and grist-mill, doing business on the premises, “ and no longer.” After .the execution of this deed the premises were held according to its terms; if they vary from the terms of the first deed, the last must govern. The parties had the power and the right to vary them. The contin *355 gency, by the happening of which the estate granted might be defeated, is substantially the same in both deeds. The estate granted is made to depend, for its continuance, on keeping a grist■mill and saw-mill on the premises doing business, as much of the time as the water, and the necessary time to repair them, would .admit of, and no longer; not on keeping a saw or grist-mill doing business. It is plain and unambiguous; we can see no room for construction. As the parties make their deeds and contracts, the •court must take them.
*It is probable that the stream would not justify keeping both mills in repair on the premises; that the defendants had better lose their estate in them than do so. This, the court can not take into consideration. It was not impossible for them to keep both mills in repair on such a stream.
No inference can be drawn to preclude the plaintiff’s right tc recover, from his not bringing an ejectment at an earlier period; although the grist-mill did no business, and was out of repair from 1821 until 1825, and from 1826 until the bringing of this action, and the saw-mill from the spring of 1824 until the fall of 1825, The estate conveyed by the deed to Clark was a qualified or determined fee. If the terms of the deed are such, as to be construed a limitation (although the reversion was not disposed of, and Sperry could enter for a forfeiture without destroying any remainder), then, the estate of Pond terminated in 1821, and by operation of law, vested in Sperry, where it has ever since remained. 2 B. C. 109, 155. If the estate of Clark was on condition in deed, then the forfeitures, which happened by suffering the grist-mill to remain still and out of repair, in 1821, and suffering the saw-mill to remain still and out of repair, in 1824, were saved by having them both running in 1826. If Sperry knew of their being out •of repair, and of the repairs going on, and did not enter or forbid the repairs; but by supposing the grist-mill to go out of repair in 1826, and cease to grind, a forfeiture again occurred, and as the grist-mill was not repaired and put in operation before a demand was made by Sperry, the forfeiture still continues. An entry or demand of Sperry revested the title in him. The bringing this action is such a demand as, in England, would entitle him to recover for the forfeiture. 2 D. Rang. 750; Burt, on Ed. 46. The" judges who tried this cause remember, that on the trial it was proved that a demand and entry was made by Sperry some time *356 before the commencement of this suit. If Sperry was ignorant-of, or did not assert his claim as soon as he might, he does not thereby forfeit his title.
*These mills, if kept in operation, as the water would permit,, would increase the value of the balance of Sperry’s tract of land, and\be a benefit to the occupier of it. This* probably, with-Sperry, was a part of the consideration for making the grant. Upon the whole,- the court overrule the motion for a new trial and enter judgment on the verdict.